# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| INTERSTATE  SERVICE  PROVIDER, INC., | § § | |
| | § | Civil Action No.  4:21-cv-267 |
| *Plaintiff*, | § § | Judge Mazzant |
| | § | |
| v. | § § | |
| WAYNE JORDAN, ET AL., | § § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants' Motion to Stay the Action Pending a Ruling from the Judicial Panel of Multidistrict Litigation (Dkt. #12) and Plaintiff's Motion to Remand (Dkt. #14).  After considering the Motions and the relevant pleadings, the Court finds that the Motions should be denied and granted, respectively.

## BACKGROUND

Plaintiff Independent Service Provider, Inc. ("ISP") is a Texas corporation which, as a carrier, "engag[es] in the business of receiving, hauling, and delivering multiple classes of freight throughout the United States" (Dkt. #1, Exhibit 2 at p. 59).  Defendants in this action include: (1) commercial truck drivers formerly associated with ISP ("Drivers"); (2)  Lanter Delivery Systems, LLC ("LDS"), which is a broker; and (3) White Line Systems, LLC ("WLS"), which is a rival carrier ISP alleges to have been created "to directly convert . . . Drivers away from" ISP (Dkt. #1, Exhibit 2 at pp. 59–60).  Briefly, ISP alleges that Defendants "hatched a scheme," under which (1) a new company—WLS—would be formed; (2) the Drivers would begin "driving the same routes, using the same trucks, and using the same equipment" for WLS as they had for ISP; and (3) both LDS and WLS would compensate the Drivers and shield them "from legal consequences coming

from [ISP] or Regulatory Agencies for any violations" (Dkt. #1, Exhibit 2 at p. 64).  This scheme allegedly began "[o]n, or within hours or days within August 22nd, 2020," and has continued ever since (Dkt. #1, Exhibit 2 at pp. 64–65).  Based on these allegations, ISP filed suit against Defendants (*see* Dkt. #1, Exhibit 2 at pp. 65–66).

ISP initially brought this action on February 16, 2021, in the 362nd Judicial District Court of Denton County, Texas (*see* Dkt. #1, Exhibit 2 at pp. 14–23).  ISP subsequently filed an amended complaint in state court on March 12, 2021 (*see* Dkt. #1, Exhibit 2 at pp. 46–71).  On March 31, 2021, WLS filed its notice of removal[1] (Dkt. #1).  On April 29, 2021, Defendants filed their Motion to Stay the Action Pending a Ruling from the Judicial Panel of Multidistrict Litigation (Dkt. #12), currently before the Court, requesting the Court stay the proceedings until the Judicial Panel on Multidistrict Litigation ("JPML") rules on the pending motion for transfer and consolidation involving this case (Dkt. #12 at pp. 2–3).  *See* Defs.' Mem. in Supp. of Mot. for Transfer and Consolidation of Related Actions Pursuant to 28 U.S.C. § 1407, *In re: Indep. Driver Litig.*, No. 3008 (J.P.M.L. Apr. 27, 2021), ECF No. 1-1.  Then on May 6, 2021, ISP filed its Motion to Remand (Dkt. #14), also currently before the Court.  On May 20, 2021, Defendants collectively filed their response to the remand motion (Dkt. #22).  On May 24, 2021, ISP filed its reply in support of remand (Dkt. #25).  And on June 1, 2021, Defendants filed their sur-reply opposing remand (Dkt. #28).

---

[1] Where, as here, 28 U.S.C. § 1441(a) serves as the sole basis for removal, "all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A); *see Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007).  Both the Drivers and LDS consented to removal (Dkts. #5, 13).

## LEGAL STANDARD

### I.    Motion to Stay Proceedings Pending MDL Decision

"The authority to stay proceedings is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Huddleston v. FBI*, No. 4:20-CV-447, 2021 WL 327510, at *1 (E.D. Tex. Feb. 1, 2021) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  Because stays are "an 'intrusion into the ordinary processes of administration and judicial review,'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Va. Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam)), they are "not a matter of right, even if irreparable injury might otherwise result," *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926).  Instead, stays are "an exercise of judicial discretion."  *Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009) (per curiam).

The orders, pretrial proceedings, and jurisdiction of a transferor court are unaffected when a party petitions the JPML for transfer and consolidation.  J.P.M.L. R.P. 2.1(d); *see Morales v. Am. Home Prods. Corp.*, 214 F. Supp. 2d 723, 725 (S.D. Tex. 2002).  "In other words, a district judge should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a parties' motion to the MDL Panel for transfer and consolidation." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997).  Nevertheless, MDL procedure is a useful "tool for saving precious judge time," *Brotherhood of Locomotive Firemen & Enginemen v. Cent. of Ga. Ry. Co.*, 411 F.2d 320, 326 n.12 (5th Cir. 1969), as "[t]ransfer under § 1407 aims to 'eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts,'" *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (2015) (quoting Manual for

COMPLEX LITIGATION § 20.131 (4th ed. 2004)).  *See In re: Bank of N.Y. Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371, 1373 (J.P.M.L. 2012) ("Centralization will avoid duplicative discovery, eliminate the risk of inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.").  Accordingly, deciding not to stay a case pending a § 1407 motion must be carefully considered.

"In determining whether to grant a stay, the Court 'weighs competing interests and balances competing hardships.'"  *Schabbing v. Teva Pharm. USA, Inc.*, No. 4:20-CV-761, 2020 WL 7396526, at *1 (E.D. Tex. Dec. 17, 2020) (quoting *Nguyen v. BP Expl. & Prod., Inc.*, No. CIV.A. H-10-2484, 2010 WL 3169316, at *1 (S.D. Tex. Aug. 9, 2010)).  The three factors courts generally examine to make this determination while the JPML considers a § 1407 motion are: "(1) potential prejudice to the nonmovant; (2) hardship and inequity to the movant if the action is not stayed; and (3) the judicial resources to be saved by avoiding duplicative litigation if the cases are consolidated."  *Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 979 (S.D. Tex. 2011).  And, "[a]t all times, the applicant for a stay 'bears the burden of establishing its need.'"  *Earl v. Boeing Co.*, No. 4:19-CV-507, 2021 WL 1080689, at *3 (E.D. Tex. Mar. 18, 2021) (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

## II.    Motion to Remand

"Federal courts are not courts of general jurisdiction" and can adjudicate only those matters "authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *see Pidgeon v. Parker*, 46 F. Supp. 3d 692, 697 (S.D. Tex. 2014) ("These limits, based on respect both for other branches of government and for the state courts, must be respected.").  "A defendant sued in state court may remove the suit to federal court so long as the federal tribunal would have had original jurisdiction

over the action." *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 307 (5th Cir. 2021) (citing 28 U.S.C. § 1441(a)).  As such, district courts are duty-bound "to ensure the existence of subject matter jurisdiction before reaching the merits of a case." *Small v. Zarvona Energy LLC*, No. CV H-20-1572, 2020 WL 2771188, at *1 (S.D. Tex. May 28, 2020); *see Humphrey v. Tex. Gas Serv.*, No. 1:14-cv-485, 2014 WL 12687831, at *2 (E.D. Tex. Dec. 11, 2014) ("In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction."). "Courts 'must presume that a suit lies outside its limited jurisdiction,' and 'any ambiguities are construed against removal and in favor of remand to state court.'" *Lamar Cnty. Elec. Coop. Ass'n v. McInnis Bros. Constr., Inc.*, No. 4:20-CV-930, 2021 WL 1061188, at *2 (E.D. Tex. Mar. 19, 2021) (brackets omitted) (first quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); and then quoting *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013)). "When considering a motion to remand, 'the removing party bears the burden of showing that federal jurisdiction exists and that removal was proper.'" *Humphrey*, 2014 WL 12687831, at *2 (brackets omitted) (quoting *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)).

## ANALYSIS

### I.   Motion to Stay Proceedings Pending MDL Decision

Defendants seek to stay these proceedings pending the JPML's transfer decision (Dkt. #12 at p. 6).  They support their position with arguments organized under the three MDL-stay considerations (*see* Dkt. #12 at pp. 4–6).  After examining their arguments, and given the Court's discretion here, the Court declines to stay the proceedings.

Before engaging Defendants' proffered reasoning, the Court notes its own concerns regarding subject matter jurisdiction in the context of this motion to stay.[2]  Despite their unique nature, MDL proceedings are federal-court actions; as such, they remain subject to the same jurisdictional practices as non-MDL proceedings.  *City of Holly Springs v. Johnson & Johnson*, 477 F. Supp. 3d 547, 549 (N.D. Miss. 2020); *see Lockerty v. Phillips*, 319 U.S. 182, 187 (1943). Courts cannot exercise the judicial power in any action, including MDL proceedings, absent subject matter jurisdiction.  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 603 n.9 (S.D.N.Y. 2001); *see In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 348 (5th Cir. 2017); *see also* Richard A. Nagareda, *Turning from Tort to Administration*, 94 MICH. L. REV. 899, 917 (1996) ("[C]onsolidation mechanisms like the MDL Panel can reach only litigation within the subject matter jurisdiction of the federal courts.").  In no way do the MDL procedure and process affect a federal court's subject matter jurisdiction in any given case.  *See DaSilva v. Toyota Motor Corp.*, 474 F. Supp. 3d 448, 453 (D. Mass. 2020); *see also* Samuel Issacharoff & Richard A. Nagareda, *Class Settlements Under Attack*, 156 U. PA. L. REV. 1649, 1675 (2008) ("MDL consolidation does not vest federal courts with additional subject matter jurisdiction . . . .").  Therefore, the Court's unremitting commitment to examine subject matter jurisdiction remains present here.  *See Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F. Supp. 2d 375, 381 (D. Md. 2011).

The duty of federal courts to ensure the continued presence of subject matter jurisdiction is of the utmost importance.  "Jurisdiction is the power to hear and determine the subject matter in controversy between parties to a suit; to adjudicate or exercise any judicial power over them."

---

[2] Even if ISP had not challenged the Court's jurisdiction with a remand motion, the Court would have fulfilled its independent obligation to consider subject matter jurisdiction before proceeding further.  FED. R. CIV. P. 12(h)(3); *see Mejia v. Barr*, 952 F.3d 255, 261 (5th Cir. 2020).

*Rhode Island v. Massachusetts*, 37 U.S. (12 Pet.) 657, 714 (1838).  This threshold requirement "'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (brackets omitted) (quoting *Mansfield, Coldwater & Lake Mich. Ry. v. Swan*, 111 U.S. 379, 382 (1884)).  Subject matter jurisdiction is indispensable—without it, federal courts lack the "power to declare the law, and[,] when it ceases to exist, the only function remaining" for a court is "announcing th[at] fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868); *see* Stephen E. Sachs, *The Unlimited Jurisdiction of the Federal Courts*, 106 Va. L. Rev. 1703, 1718 (2020) ("A judgment without jurisdiction [i]s *coram non judice*, not before a judge; it [i]s null and void, a piece of 'waste paper.'" (footnote and original alteration omitted) (quoting *Voorhees v. Jackson*, 35 U.S. (10 Pet.) 449, 475 (1836))).

True, a transferor court may stay proceedings pending the JPML's decision to transfer even when a motion to remand remains before the transferor court.  *Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*, 87 F. Supp. 3d 463, 467 (S.D.N.Y. 2015); *see In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2873, 2021 WL 755083, at *1 (J.P.M.L. Feb. 4, 2021) ("The [JPML] has held that such jurisdictional objections generally do not present an impediment to transfer.").  This notwithstanding, the decision to stay remains within the Court's discretion.  *Bergeron v. Long*, No. 1:13-CV-429, 2013 WL 12323397, at *1 (E.D. Tex. Aug. 6, 2013).  And, for two primary reasons, the Court finds that jurisdictional considerations counsel against granting a stay.

First, the Court is uncomfortable staying a case without first verifying subject matter jurisdiction.  The Constitution vests "the judicial Power" with the Court and other "inferior Courts as the Congress may from time to time ordain and establish."  U.S. Const. art. III, § 1.  Federal

subject matter jurisdiction is just one aspect of this authority—it is nothing more than the extent to which a federal court possesses the judicial power to hear a case. *See United States v. Cotton*, 535 U.S. 625, 630 (2002).  For quite some time, it has been recognized that district courts possess "discretionary authority to issue a stay . . . 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009) (quoting *Landis*, 299 U.S. at 254–55).  This concept of inherent authority refers to those judicial powers "that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–631 (1962)); Amy Coney Barrett, *Procedural Common Law*, 94 VA. L. REV. 813, 842 (2008) ("[I]nherent powers are those so closely intertwined with a court's identity and its business of deciding cases that a court possesses them in its own right, even in the absence of enabling legislation.").  But this inherent authority possessed by federal courts is not without bounds—it is "subject, of course, to congressional limitation." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978); *see Stoll v. Gottlieb*, 305 U.S. 165, 171 (1938) ("A court does not have the power, by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators.").  The Supreme Court clarified this point half a decade ago, declaring that "the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz*, 136 S. Ct. at 1892.

Here, two enactments—a rule and a statute—give the Court pause as to the scope of its inherent power to stay the instant action.  First, Rule 12(h)(3) of the Federal Rules of Civil Procedure instructs that any action be dismissed without delay if the Court "determines at any time

that it lacks subject-matter jurisdiction." *See Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981) ("[I]t is incumbent upon federal courts . . . to constantly examine the basis of jurisdiction."). Second, 28 U.S.C. § 1447(c) mandates that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *See Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007) ("[A] case can be properly removed and yet suffer from a failing in subject-matter jurisdiction that requires remand."). To be sure, staying a case and adjudicating a merits issue are not equivalent exercises of the judicial power. Yet, to some degree, either action necessarily implicates the Court's authority to exercise its judicial power—and, thereby, subject matter jurisdiction as well. *See Stoll*, 305 U.S. at 171–72. All of this is to say that federal court jurisdiction must be "carefully guarded against expansion by judicial interpretation," *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17 (1951), and both Rule 12(h)(3) and § 1447(c) give the Court genuine reason to question its authority to issue a stay under these circumstances.

Second, federalism interests caution the Court against granting a stay. Federalism is the cornerstone of the American political structure, and it may (quite literally) be *the* first principle of the constitutional order. *See Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996) (exploring the possibility that the "tremendous waste of judicial and private resources" removal and remand can cause are the "price that must be paid for federalism"). In the beginning, "[t]he Framers split the atom of sovereignty," and "[i]t was the genius of their idea that our citizens would have two political capacities, one state and one federal, each protected from incursion by the other." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838 (1995) (Kennedy, J., concurring); *see* THE FEDERALIST NO. 39, at 239 (James Madison) (Clinton Rossiter ed., 1961) (explaining that "assent and ratification" of the Constitution would "be given by the people, not as individuals composing

one entire nation, but as composing the distinct and independent States to which they respectively belong").  The principle of federalism is reflected in, *inter alia*, the "complementary systems" that constitute the federal and state judiciaries, which share in the "administ[ration of] justice in our Nation." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586 (1999).

A frequent point at which these judicial systems interact is removal, which today "remains a centerpiece of our federalism."  *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc); *see BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1540 (2021) ("[R]emoval practices implicate questions of comity between federal and state authorities.").  And while federal tribunals must operate according to constitutional and statutory delineations of authority, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941), "[d]ue regard for the rightful independence of state governments . . . requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined," *Healy v. Ratta*, 292 U.S. 263, 270 (1934).  When a litigant removes an action from state court, "the removing entity is invoking the coercive power of the national judicial system to literally rip a case away from [that] state court." Jeffrey W. Stempel, Thomas O. Main, & David McClure, *Snap Removal: Concept; Cause; Cacophony; and Cure*, 72 Baylor L. Rev. 423, 492 (2020).  When an Article III tribunal permits improper removal, the federal court runs roughshod over the federalist design "by depriving a sovereign state of the right to adjudicate its own cases and controversies." *Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 756 F.3d 327, 339 (5th Cir. 2014).  This being the case, it is clear that determining the propriety of removal is a delicate endeavor precisely because of the "significant federalism concerns" that are raised.  *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008); *see* Scott Dodson, *In Search of Removal Jurisdiction*, 102 Nw. U. L. Rev. 55, 59–60 (2008).

There is minimal indication here that Defendants are concerned the Court may encroach upon the authority of the Texas judicial system.  The Court, however, is weary of this possibility. *See Steel Co.*, 523 U.S. at 101 ("The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times . . . .").  Given the current posture of this case, the Court finds that, as "in most instances, . . . both expedition and sensitivity to state courts' coequal stature . . . impel" the Court to wrangle with subject matter jurisdiction at this juncture. *Ruhrgas*, 526 U.S. at 587–88; *see Smallwood*, 385 F.3d at 576 ("[A] state court is to be trusted to handle the suit unless the suit satisfies the removal requirements.").

On its own, these jurisdictional concerns suffice to justify the Court's decision to deny the motion to stay.  Nevertheless, the Court now turns to Defendants' arguments.  Defendants lead off with their concerns regarding judicial efficiency, offering that "[t]he goals of consistency and economy will be served by a stay here pending the JPML's decision" (Dkt. #12 at p. 4).  Without a doubt, these are critical considerations for MDL proceedings.  *See* 28 U.S.C. § 1407(a); *see also In re Rolls Royce Corp.*, 775 F.3d 671, 682 (5th Cir. 2014).  But not always.  *See, e.g.*, *Barragan v. Warner-Lambert Co.*, 216 F. Supp. 2d 627, 630 (W.D. Tex. 2002); *see also In re "East of the Rockies" Concrete Pipe Antitrust Cases*, 302 F. Supp. 244, 254 (J.P.M.L. 1969) (Weigel, J., concurring) ("In some such cases, . . . coordination and consolidation may impair, not further, convenience, justice and efficiency.").  For instance, since the parties have already briefed the remand issue in full, "delay and costs would only increase if the Court were to grant the stay and leave the remand issue for the MDL court to resolve at some later date."[3] *Durr v. Erwin*, No. 3:13-

---

[3] This is particularly the case since the JPML cannot resolve motions to remand. *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 368 F. Supp. 812, 813 n.1 (J.P.M.L. 1973); *see* George T. Conway III, Note, *The Consolidation of Multistate Litigation in State Courts*, 96 YALE L.J. 1099 (1987) (proposing that the JPML should possess the authority to direct litigation to and from state courts).

CV-320, 2013 WL 6079506, at *2 (S.D. Tex. Nov. 19, 2013) (Costa, J.).  Furthermore, by deciding the remand motion, the Court will prevent a sister court, "already burdened due to the litigation arising out of these facts, from having to spend its limited resources on a matter th[e C]ourt is perfectly capable of deciding."  *Shields v. Bridgestone/Firestone, Inc.*, 232 F. Supp. 2d 715, 718 (E.D. Tex. 2002); *see Quinn v. JPMorgan Chase Bank, N.A.*, 20-CV-4100 (JSR), 2020 WL 3472448, at *2 (S.D.N.Y. June 24, 2020).  Therefore, the Court does not find the judicial-economy factor to weigh in favor of a stay.

Next, Defendants urge the Court to stay the proceedings because Defendants "will be harmed if . . . this action[] remain[s] pending while the [JPML] considers the consolidation and transfer motion" (Dkt. #12 at p. 5).  Specifically, Defendants argue that, "[b]ecause contract interpretation underlies [ISP's] claims, Defendants will be prejudiced if different courts interpret the provisions in a different manner" (Dkt. #12 at p. 5).  This argument is unconvincing (and mildly confusing).  For one thing, the Court is unsure how Defendants will be prejudiced by courts simply applying binding legal precedent to interpret a contract.  Moreover, such a result would not be prejudicial to Defendants because they were free to control the applicable law and forum in their contracts with ISP *ex ante* through choice-of-law and forum-selection provisions.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991); *see also, e.g.*, *Martinez v. Bloomberg LP*, 740 F.3d 211, 223 (2d Cir. 2014) ("[P]arties are free, via a choice-of-law clause, to select the law t[hat] govern[s] . . . ."); *Red Bull Assocs. v. Best W. Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir. 1988) ("[I]ndividuals are free to regulate their purely private disputes by means of contractual choice of forum . . . .").  As such, the Court finds this factor to weigh against granting a stay.

Finally, Defendants reason that a stay is warranted because ISP will not suffer prejudice given the "very early stage" of the case (Dkt. #12 at p. 6).  The problem with this argument is

twofold.  First, a plaintiff is the master of the complaint, a role which involves selecting the judicial system in which an action is heard.  *See Aaron v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 876 F.2d 1157, 1161 n.7 (5th Cir. 1989) ("The concept of plaintiff as master of his claim is especially pertinent in removal cases . . . .").  Accordingly, staying this case until the JPML renders a decision would deprive ISP of its choice of forum, even if only for the time being.  *See In re "East of the Rockies" Concrete Pipe Antitrust Cases*, 302 F. Supp. at 254.  Second, Congress designed the removal-and-remand process to address jurisdictional matters speedily.  *See Bellorin v. Bridgestone/Firestone, Inc.*, 236 F. Supp. 2d 670, 676 (W.D. Tex. 2001) (describing Congress's design of the removal statute to facilitate the resolution of federal-jurisdiction issues "in an expeditious manner"); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 77 (1996) (describing the "outcome of an unwarranted removal" as "a *swift* and nonreviewable remand order" (emphasis added)).  Because Congress clearly desires for federal courts to resolve removal matters quickly, staying the immediate action, while not technically contravening congressional mandate, seems incongruent with Congress's intent for the removal-and-remand process.[4]  *See Meeks v. Swift Transp. Inc.*, No. EP-09-CV-298-KC, 2009 WL 4878629, at *4 (W.D. Tex. Dec. 11, 2009).  Therefore, the Court finds this factor to counsel against granting a stay.

Given the Court's concerns regarding subject matter jurisdiction and the stay factors weighing against Defendants' position, the Court declines to grant Defendants' request to stay the proceedings until the JPML renders a decision on the § 1407 motion to transfer.

## II.    Motion to Remand

ISP initially filed this suit in state court, asserting causes of action for, among others, breach of contract, unjust enrichment, and injunctive relief (Dkt. #1 at p. 2; Dkt. #1, Exhibit 1 at pp. 65–

---

[4] It is also not uncommon for defendants to attempt to refashion related cases into a singular MDL proceeding as a delay tactic.  *See DeLaventura v. Columbia Acorn Tr.*, 417 F. Supp. 2d 147, 155–56 (D. Mass. 2006) (Young, J.).

66).  WLS removed this action on the basis of federal-question jurisdiction, stating that the Federal

Aviation Administration Authorization Act ("FAAAA") "preempts [ISP]'s equitable claim for

unjust enrichment and injunctive relief, as well as [ISP's] claims for tortious interference" (Dkt.

#1 at p. 2).  ISP disagrees, arguing that it "alleges only state law claims" and the FAAAA does not

completely preempt these claims (Dkt. #14 at p. 4).  As such, ISP maintains that no federal question

is present, and, accordingly, the Court does not possess subject matter jurisdiction over the action

(Dkt. #14 at p. 4).  The Court turns to this issue to determine if subject matter jurisdiction exists.

A defendant may remove a civil action from state court to a federal district court if the

federal court has original jurisdiction over the action.  28 U.S.C. § 1441(a); *accord Tex. Brine Co.,*

*L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 485 (5th Cir. 2020).  By statute, federal courts have

original jurisdiction over civil actions involving a federal question—those that "aris[e] under the

Constitution, laws, or treaties of the United States.'"  28 U.S.C. § 1331.  *See generally* RICHARD

H. FALLON, JR. ET AL., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM

779–83 (7th ed. 2015).  "[F]ederal-question jurisdiction is governed by the 'well-pleaded

complaint rule,' which provides that federal jurisdiction exists only when a federal question is

presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*,

482 U.S. 386, 392 (1987); *see Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Tr. for S.*

*Cal.*, 463 U.S. 1, 10 (1983) (explaining that federal courts do not have original jurisdiction over

cases in which "the complaint presents a state-law cause of action" but also asserts that either (1)

"federal law deprives the defendant of a defense he may raise" or (2) "a federal defense the

defendant may raise is not sufficient to defeat the claim" (citations omitted)).  Relatedly, any

defense "rais[ing] a federal question is inadequate to confer federal jurisdiction."  *Merrell Dow*

*Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986); *see Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

There is, however, an "independent corollary" to the well-pleaded complaint rule known as the "artful pleading doctrine." *Roland v. Green*, 675 F.3d 503, 520 (5th Cir. 2012), *aff'd sub nom. Chadbourne & Parke LLP v. Troice*, 571 U.S. 377 (2014).  "Under the artful-pleading doctrine, a federal court may have federal-question jurisdiction over a state-law claim in only two circumstances," the relevant one here being "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020); *see In re Estate of Goudreau*, No. 4:20-CV-970, 2021 WL 1518114, at *3 (E.D. Tex. Apr. 16, 2021) ("The Supreme Court has articulated that 'when a federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" (brackets omitted) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003))).  This principle, known as complete preemption, provides that "if the subject matter of a putative state law claim has been totally subsumed by federal law—such that state law cannot even treat on the subject matter—then removal is appropriate." *Lontz v. Tharp*, 413 F.3d 435, 439–40 (4th Cir. 2005); *see Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 467 n.3 (5th Cir. 2016).  "In other words, when Congress has manifested an intent to completely preempt a field, 'federal question jurisdiction therefore exists because there is, in short, no such thing as a state-law claim' in that field."[5]  *Yan v. US*

---

[5] Complete preemption must be distinguished from ordinary preemption, which "simply 'declares the primacy of federal law, regardless of the forum or the claim.'" *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) (quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 331 (5th Cir. 2008)); *see Sw. Airlines Pilots Ass'n v. Boeing Co.*, No. 3:19-CV-2680-M, 2020 WL 2549748, at *3 (N.D. Tex. Apr. 29, 2020) ("Ordinary preemption is a defense, which does not appear on the face of a well-pleaded complaint . . . .").  The critical difference between complete and ordinary preemption is that the former is jurisdictional, while the latter is not.  *See McKnight v. Dresser, Inc.*, 676 F.3d 426, 430 (5th Cir. 2012).  As such, complete preemption creates removal jurisdiction, and ordinary preemption cannot.  *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000); *see* 14C CHARLES ALAN

*Aviation Grp., LLC*, No. 4:20-CV-793-SDJ, 2020 WL 7631193, at *4 (E.D. Tex. Dec. 22, 2020) (brackets and ellipsis omitted) (quoting *Bernhard v. Whitney Nat. Bank*, 523 F.3d 546, 551 (5th Cir. 2008)).  "The Fifth Circuit has characterized 'complete preemption as less a principle of substantive preemption than a rule of federal jurisdiction.'"  *Marks v. Suddath Relocation Sys., Inc.*, 319 F. Supp. 2d 746, 750 (S.D. Tex. 2004) (cleaned up) (quoting *Roark v. Humana, Inc.*, 307 F.3d 298, 305 (5th Cir. 2002)).

"[T]he linchpin of an inquiry into the existence of complete preemption is Congress's intent about whether or not to create an exclusive federal cause of action," *Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 8 (1st Cir. 2014), and this analysis is "no easy task," *Bullard v. Sw. Crop Ins. Agency, Inc.*, 984 F. Supp. 531, 535 (E.D. Tex. 1997).  *See United Motorcoach Ass'n, Inc. v. City of Austin*, 851 F.3d 489, 492 (5th Cir. 2017).  Furthermore, because "there is a 'deeply rooted presumption in favor of concurrent state court jurisdiction,'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378 (2012) (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458–459 (1990)), the complete preemption doctrine serves as a narrow exception to the well-pleaded complaint rule, *Hood ex rel. Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 89 (5th Cir. 2013).  *See Justices v. Murray*, 76 U.S. (9 Wall.) 274, 280 (1869) ("Th[e] idea of calling to the aid of the Federal judiciary the State tribunals, by leaving to them concurrent jurisdiction in which Federal questions might be involved, with the right of appeal to the Supreme Court, will be found to be extensively acted upon in the distribution of the judicial powers of the United States . . . .").  This being the case, complete preemption is exceedingly rare.  *Krakowski v. Allied Pilots Ass'n*, 973 F.3d 833, 838 (8th Cir. 2020); *see Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1097 (10th Cir. 2015) (Gorsuch, J.) (noting

---

WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3722.2 (Rev. 4th ed.) ("This distinction has serious implications for the availability of removal.").

16

that the Supreme Court has "so far encountered only three . . . statutes" that are "true complete preemption statute[s]").

As for the statutory scheme at issue, Congress enacted the FAAAA as a deregulatory measure "that seeks to encourage market forces" within the ground-transportation industry. *Cardinal Towing & Auto Repair, Inc. v. City of Bedford, Tex.*, 180 F.3d 686, 695 (5th Cir. 1999). *See generally Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 654–655 (9th Cir. 2021); *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544, 548–49 (7th Cir. 2012).  In writing the FAAAA, Congress "borrowed language from the Airline Deregulation Act of 1978" (ADA) and included a preemption provision, *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008), which reads, in relevant part, "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property," 49 U.S.C. § 14501(c)(1).[6]  *See Am. Trucking Assocs., Inc. v. City of Los Angeles, Cal.*, 569 U.S. 641, 646 (2013).  This provision serves as the backdrop for the preemption question currently before the Court.

Prior to analyzing the immediate claims of FAAAA preemption, the Court notes that the cases Defendants use to argue in favor of their complete-preemption theory are inapposite, as they instead concern *ordinary* preemption (Dkt. #14 at pp. 10–14; Dkt. #25 at pp. 2–5).  This is evident given the posture from which these cases were decided—upon a finding of complete preemption, and thereby a lack of subject matter jurisdiction, courts would have been precluded from issuing any sort of merits decision.  *See Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778–79 (2000).  Such was not the case in almost all cases Defendants cited.  *See Zamorano*

---

[6] For purposes of this action, ISP and Defendants, in their respective capacities, qualify as entities covered by the FAAAA's preemption provision.  *See* 49 U.S.C. § 13102(2)–(3), (14), (23)(b) (applicable FAAAA definitions).

*v. Zyna LLC*, No. SA-20-CV-00151-XR, 2020 WL 2316061, at *2 (W.D. Tex. May 11, 2020) (Rule 12(b)(6)); *Lopez v. Amazon Logistics, Inc.*, 458 F. Supp. 3d 505, 516–17 (N.D. Tex. 2020) (remand granted for lack of federal subject matter jurisdiction); *Huntington Operating Corp. v. Sybonney Express, Inc.*, No. CIV.A. H-08-781, 2010 WL 1930087, at *2 (S.D. Tex. May 11, 2010) (summary judgment); *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1061 (10th Cir. 2019) (Rule 12(b)(6)); *Overka v. Am. Airlines, Inc.*, 790 F.3d 36, 41 (1st Cir. 2015) (Rule 12(b)(6)); *Brown v. United Airlines, Inc.*, 720 F.3d 60, 62 (1st Cir. 2013) (Rule 12(b)(6)); *Barber Auto Sales, Inc. v. United Parcel Servs., Inc.*, 494 F. Supp. 2d 1290, 1292 (N.D. Ala. 2007) (summary judgment); *All World Pro. Travel Servs., Inc. v. Am. Airlines, Inc.*, 282 F. Supp. 2d 1161, 1165 (C.D. Cal. 2003) (Rule 12(b)(6)); *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 666 (N.D. Ga. 1997) (Rule 12(b)(6)).  And in the only two cases Defendants call upon that found complete preemption under the FAAAA, neither court considered the causes of action at issue in the instant matter.  *See Gillum v. High Standard, LLC*, No. SA-19-CV-1378-XR, 2020 WL 444371, at *3 (W.D. Tex. Jan. 27, 2020) (negligence claim against brokers regarding selection of motor carriers for the transportation of property); *Luccio v. UPS, Co.*, No. 9:16-CV-81703-RLR, 2017 WL 412126, at *1 (S.D. Fla. Jan. 31, 2017) (negligence claim against brokers regarding handling of property during transportation).  It is clear to the Court that, to invoke the Court's jurisdiction, Defendants are raising the FAAAA as a defense to ISP's claims.  The problem with this strategy, however, is that the ordinary-preemption defense does not make a case removable. *Wis. Interscholastic Athletic Ass'n v. Gannett Co., Inc.*, 658 F.3d 614, 620 (7th Cir. 2011) (explaining that answering a claim with the defense of ordinary preemption "cannot serve as a basis for [a] federal court's power"); *see Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1350 n.4

18

(2020).  Therefore, the cases Defendants offer in support of their complete-preemption argument are inapplicable.[7]

But assuming momentarily that Defendants had provided viable caselaw for their argument, such position would remain without merit (*see* Dkt. #1 at pp. 2, 4; Dkt. #22 at pp. 2, 5, 6 n.2).  Defendants removed this case on federal-question grounds, arguing that the FAAAA completely preempts ISP's claims for "unjust enrichment," "injunctive relief," and "tortious interference" (Dkt. #1 at p. 2).  The Court construes each "claim," as pleaded by ISP, to be based upon the existence of contracts Defendants had with ISP.  *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000) (unjust enrichment); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (injunctive relief); *Cmty. Health Sys. Prof. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017) (tortious interference with contractual and business relationships).  Sister courts in the Fifth Circuit have found that the FAAAA does not preempt contract-based claims.  *See, e.g.*, *Wise Recycling, LLC v. M2 Logistics*, 943 F. Supp. 2d 700, 704–05 (N.D. Tex. 2013) (Solis, J.); *Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F. Supp. 2d 638, 642–43 (N.D. Tex. 2010) (Lindsay, J.); *Huntington*, 2010 WL 1930087, at *3 (Harmon, J.); *accord Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc.*, 734 F.3d 296, 307 (4th Cir. 2013).

The justification detailed by these courts generally tracks the following logic: "Congress used the same language as found in the ADA when writing the FAAAA and intended to incorporate [*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)]'s 'broad preemption interpretation.'" *Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 18 (1st Cir. 2014) (quoting *Rowe*, 552 U.S. at 370);

---

[7] Courts that considered this issue in related actions have arrived at the same result.  *See Indep. Serv. Provider, LLC v. Greene*, No. 8:21-CV-730-TPB-TGW, 2021 WL 2042668, at *1 (M.D. Fla. May 21, 2021); *Indep. Serv. Provider, LLC v. Kelley*, No. 8:21-CV-748-CEH-AEP, 2021 WL 1890707, at *2 (M.D. Fla. May 11, 2021); Order Remanding Case to State Ct. 3–4, *C Pepper Logistics LLC v. Brannen*, No. 0:21-CV-60670-WPD (S.D. Fla. May 4, 2021), ECF No. 24; Order 2–3, *C Pepper Logistics v. Davis*, No. 6:21-CV-00559-PGB-EJK (M.D. Fla. Apr. 21, 2021), ECF No. 20.

see *Cartegena v. Cont'l Airlines, Inc.*, 10 F. Supp. 2d 677, 680 (S.D. Tex. 1997) ("Th[e FAAAA preemption] provision is the same as in the ADA." (citation omitted)).   As such, in almost all circumstances, courts rely on ADA-preemption caselaw to inform preemption analysis for the FAAAA.   *Popal v. Reliable Cargo Delivery, Inc.*, No. PE:20-CV-00039-DC-DF, 2021 WL 1100526, at *5 (W.D. Tex. Jan. 20, 2021), *report and recommendation adopted in part, rejected in part on different grounds*, 2021 WL 1100097 (W.D. Tex. Mar. 10, 2021); *accord Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 818 (3d Cir. 2019) ("Because of the parallels between the ADA and FAAAA, ADA cases are instructive regarding the scope of FAAAA preemption.").   And because the Supreme Court found the ADA to permit "state-law-based court adjudication of routine breach-of-contract claims" absent "enlargement or enhancement based on state laws or policies external to the agreement," *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232–33 (1995), the same conclusion applies when analyzing contract-based claims in the FAAAA-preemption context.   *See Wise Recycling*, 943 F. Supp. 2d at 705; *Chatelaine*, 737 F. Supp. 2d at 643; *Huntington*, 2010 WL 1930087, at *3; *see also Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1052 (7th Cir. 2016) ("[B]reach-of-contract claims . . . were not preempted [under the ADA] because they are 'privately ordered obligations' that 'simply hold parties to their agreements' and 'thus do not amount to a State's enactment or enforcement of any law' . . . ." (brackets and original alterations omitted) (quoting *Wolens*, 513 U.S. at 228–29)).

The Court finds the reasoning in *Wise Recycling*, *Chatelaine*, and *Huntington* persuasive and adopts it here.   Each of ISP's claims that Defendants maintain as the bases for the Court's subject matter jurisdiction are contract-dependent.   Because the Court finds that the FAAAA does not preempt ISP's contract-related claims since they have not been enlarged or enhanced by state law or policies external to the relevant contracts, complete preemption—and, thereby, subject

matter jurisdiction—is not present.[8]   Accordingly, the Court does not possess the authority under Article III to adjudicate this matter.

Defendants offer one final argument in support of their position, maintaining that the policy goals Congress contemplated when it enacted the FAAAA would be promoted were the Court to find subject matter jurisdiction (Dkt. #22 at pp. 8–10; Dkt. #28 at p. 2).  *See Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 263 (2013) ("Concerned that state regulation 'impeded the free flow of trade, traffic, and transportation of interstate commerce,' Congress[, in the FAAAA,] resolved to displace 'certain aspects of the State regulatory process.'" (citation and emphasis omitted)); *Cole v. City of Dallas*, 314 F.3d 730, 734 (5th Cir. 2002) ("[A] survey of the [FAAAA's] legislative history reveals that Congress intended to divorce the motor carrier industry from state and local economic regulation in order to provide motor carriers . . . the same competitive advantages enjoyed by air carriers.").  This last-ditch effort ultimately falls flat.

The problem with this argument, as always, stems from the separation-of-powers principle imbued within the federal government's tripartite structure.  "[T]he lawmaking function belongs to Congress," not the courts.  *Loving v. United States*, 517 U.S. 748, 758 (1996).  The Constitution charges Article III tribunals with interpreting law as to give effect to congressional intent, and they must do so by looking to the ordinary meaning of the words Congress enacted at the culmination of the legislative process.  *See Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 769 (2019); *United States v. Koutsostamatis*, 956 F.3d 301, 310 (5th Cir. 2020) ("[W]hat Congress says in a statute's text is the best guide to what Congress intends.").  Especially in the context of preemption analysis, any

---

[8] Even if the Court were incorrect and the FAAAA preempted at least one of ISP's claims, the Court would still lack subject matter jurisdiction over the immediate action because the preemption present would be of the ordinary variety. *See Gillum*, 2020 WL 444371, at *7.  State courts can adjudicate questions of ordinary preemption as ably as federal courts.  *See Tarble's Case*, 80 U.S. (13 Wall.) 397, 406–08 (1871); *see also, e.g.*, *DHL Express (USA) Inc. v. Falcon Express Int'l Inc.*, 408 S.W.3d 406, 409–17 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (Huddle, J.).

evidence of congressional purpose "must . . . be 'sought in the text and structure of the statute at issue.'"  *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1907 (2019) (plurality opinion).  Absent support from the statutory text, Defendants ask the Court to consider the FAAAA's legislative purpose and locate federal subject matter jurisdiction in the present action—the Supreme Court has specifically held, however, that "vague notions of a statute's 'basic purpose' are . . . inadequate to overcome the words of its text."  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993); *see Earl v. Boeing Co.*, No. 4:19-CV-507, 2021 WL 274435, at *19 (E.D. Tex. Jan. 27, 2021) ("[C]hasing notions of statutory purpose instead of relying on the language Congress enacted 'takes no account of the processes of compromise and, in the end, prevents the effectuation of congressional intent.'" (quoting *Bd. of Governors of Fed. Rsrv. Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 374 (1986))).

"Even under the best of circumstances, venturing beyond 'the plain language of a statute in search of a possibly contrary congressional intent is a step to be taken cautiously.'"  *Earl*, 2021 WL 274435, at *20 (quoting *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 75 (1982)).  The Court finds that doing so here is both perilous and unwarranted.  *See Hernandez v. Mesa*, 140 S. Ct. 735, 741–42 (2020) ("No law 'pursues its purposes at all costs.'" (quoting *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013))).  Moreover, even if the Court were inclined to view Congress's purpose for enacting the FAAAA as sufficiently strong to overcome the statute's text, the Court would still decline to give effect to such legislative purpose because "people are entitled to rely on [a] law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration."  *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1749 (2020).  For the foregoing reasons, the Court declines Defendants' invitation to override the plain text of the FAAAA on account of sweeping and imprecise notions of Congress's intent.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Stay the Action Pending a Ruling from the Judicial Panel of Multidistrict Litigation (Dkt. #12) is **DENIED**.

It is **FURTHER ORDERED** that Plaintiff's Motion to Remand (Dkt. #14) is **GRANTED**, and this case is remanded to the 362nd Judicial District Court of Denton County, Texas.

**IT IS SO ORDERED.**

**SIGNED this 9th day of June, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE